IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SARAH ENDERS,

        Plaintiff,                        Case No.

v.

                                            JURY DEMAND

ROBERT J. YOUNG COMPANY LLC
d/b/a RJ YOUNG

        Defendant.
_____/

## COMPLAINT

Plaintiff, Sarah Enders ("Ms. Enders"), worked for Defendant RJ Young for over eight years. She went from a part-time graphic designer to marketing Director, a role in which she ran two departments and supervised over 20 employees. Ms. Enders gave notice of her pregnancy in 2019 and planned to take uninterrupted maternity leave from January 30, 2020 until the end of April, 2020. However, rather than allowing her an uninterrupted leave, as required by the Family and Medical Leave Act, Ms. Enders was constantly called upon to handle urgent matters for the company. By mid-March, while still technically on leave, she was working approximately 20 hours per week in order to assist the company in coordinating it's COVID-19 response. She returned to work full time in April and began immediately working over 40 hours per week. A few weeks after her return to work from her maternity leave, Ms. Enders was terminated. RJ Young promoted another employee to Marketing Manager and then hired a consultant as Marketing Director in her place. Neither employee had taken maternity leave or FMLA leave. Accordingly, Ms. Enders files the instant Complaint for violations of the Family and Medical Leave Act, Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act and the Tennessee Maternity Leave Act.

1

## PARTIES

1. Plaintiff, Sarah Enders, ("Ms. Enders") is a citizen and resident of Davidson County, Tennessee, and a former employee of Defendant. Plaintiff worked for Defendant at its location in Nashville, TN.

2. Defendant Robert J. Young Company LLC D/B/A RJ Young ("RJ Young') is a Tennessee limited liability corporation licensed to transact business in Tennessee. Its registered agent for service of process is Chip Crunk, 809 Division Street, Nashville, TN 37203-4108. At all material times, Defendant has been an employer as defined by the FMLA, the ADA and under state law.

3. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2018 and/or 2019 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

4. At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

5. At all times material to this action, Defendant was an employer within the meaning of Title VII, FMLA and state law.

## JURISDICTION AND VENUE

6. This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") (Count II); the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, et seq. (Count III); and the Tennessee Maternity Leave Act ("TMLA"), T.C.A. §4-21-408, et seq. (Count IV).

7. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

8. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue.

**FACTS**

9. Ms. Enders was employed with RJ Young for eight years, during which time she held various positions. She was hired in March 2012 as a part-time graphic designer. Through the years she was promoted internally and in 2016 was promoted to Marketing Director.

10. In her role as Marketing Director, she ran the marketing department and supervised 20 employees and several freelancers. As Marketing Director, she was in charge of the marketing department and the customer service department.

11. Her role was to develop the company's marketing strategy, work with the sales team to implement the strategy, and grow business for the company.

12. Ms. Enders was very successful in her role as Marketing Director and consistently received raises and excellent performance reviews.

13. In 2019, due to her direction, the Marketing Department brought in revenue of four million dollars for the company.

14. In early August 2019, Ms. Enders notified her direct supervisor, Executive Vice President Hunter McCarty, that she was pregnant and intended to take a pregnancy leave pursuant

to the FMLA. She also gave notice under the Tennessee Maternity Leave Act that she intended to take leave. She had turned in all required paperwork and her leave was approved.

15. Ms. Enders performed her job duties without incident and was never given a write up for performance or placed on a Performance Improvement Plan.

16. According to RJ Young's policy, employees were allowed twelve weeks of maternity leave, paid at 75% of their salary. Ms. Enders applied for and received that leave. This was full-time leave, during which no work was to be performed by the employee.

17. Ms. Enders' leave was approved by RJ Young and was intended to commence on January 30, 2020. Ms. Enders' intended to return four months later, at the end of April 2020.

18. Instead, Ms. Enders was required to return to work during her leave to assist the company in creating and implementing a strategic plan to respond to business needs due to the COVID-19 pandemic.

19. While still on leave, and still being paid only 75% of her salary, Ms. Enders returned to work and worked an average of 20 hours per week. During this time, many RJ Young employees, including Ms. Enders, were officing from home.

20. During this time period, Ms. Enders worked extensively on crafting projections and budgeting for the departments she was in charge of: marketing and customer service. She worked extensively with Mr. McCarty to determine staffing decisions, including decisions to lay off employees in her departments.

21. At the end of April, Ms. Enders returned from her maternity leave and began working full-time. She was still reporting to Executive Vice President Hunter McCarty.

22. After about a week, Mr. McCarty retired, and Ms. Enders reported to CEO Mr. Crunk. Ms. Enders had reported to him for several years prior to reporting to Mr. McCarty.

23. Ms. Enders endeavored several times to set up meetings with Mr. Crunk to discuss pressing matters in her department. However, Ms. Enders received the brush off from Mr. Crunk who did not return Ms. Enders' calls and did not speak with her at all after her return.

24. The company underwent another round of lay-offs and laid off more individuals in the customer service department, which Ms. Enders supervised.

25. Ms. Enders had worked on projections and had presented data that due to those lay offs the customer service department was not able to adequately handle customer calls. Both Ms. Enders and the Customer Service Manager objected to further lay-offs in the customer service department.

26. On Thursday, May 28, 2020, she was informed that all lay-offs were complete and that there would be no more lay-offs.

27. On Friday, May 29, 2020, Ms. Enders received a call from Human Resources Director Kerry Crotts who told her that she would be laid off. Ms. Enders was shocked and devastated.

28. One hour later, Mr. Crotts called Ms. Enders back and told her that he did not want her to lay off to be permanent, but that he was directed by the CEO, Mr. Crunk, to terminate her.

29. Two hours later, Mr. Crotts called again and said that the termination was a mistake, that the CEO did not realize all the work that Ms. Enders had been doing, and that she was not terminated. Mr. Crotts directed Ms. Enders to take a paid week off and return to work on June 8, 2020.

30. And then, thirty minutes after her call with Mr. Crotts, she received a call from the Chief Operating Officer, Mr. AJ Baggott, who apologized for the miscommunication and told her that the CEO had directed her termination but now had changed his mind and she would **not** be

terminated.

31. Ms. Enders was off on Monday, June 1, 2020, as directed by Mr. Crotts.

32. On Tuesday, June 2, 2020, Ms. Enders received a call from Mr. Crotts stating that the CEO had again changed his mind and had determined that she would be permanently terminated.

33. The termination caused Ms. Enders severe emotional distress.

34. On information and belief, after Ms. Enders' termination on June 2, 2020, RJ Young promoted an employee in the marketing department, a female who had not become pregnant and who had not taken maternity leave, to the role of marketing manager. In this role, the marketing manager supervised the marketing department and largely performed the tasks Ms. Enders had performed. This employee received a pay increase.

35. On information and belief, in July 2020, after it terminated Ms. Enders, RJ Young engaged an outside consultant to perform the Director tasks that Ms. Enders had been performing. On information and belief, the marketing consultant was paid more that Ms. Enders was paid and was not pregnant.

36. On information and belief, in November 2020, RJ Young hired the marketing consultant as a full-time employee to perform the duties Ms. Enders had been performing. On information and belief, this new Marketing Director was paid more than Ms. Enders had been earning.

37. Thus, Ms. Enders was replaced by two individuals who cost the company more than Ms. Enders had cost the company. Therefore, Ms. Enders' termination was not a cost-saving tactic.

38. On information and belief, RJ Young did not suffer a significant interruption in business due to COVID-19. In fact, business either maintained or increased.

39. RJ Young has engaged in a pattern and practice of discriminating and retaliating against employees who take pregnancy leave and has been sued by several former employees due to its discriminatory actions.

**Count I**
**Violation of FMLA**

40. Plaintiff restates and incorporates herein the foregoing paragraphs.

41. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

42. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

43. Plaintiff was entitled to receive FMLA leave to care for her own serious health condition and for the birth of a child.

44. Defendant subjected Plaintiff to disparate terms and conditions of including but not limited to, interfering with her rights to take FMLA on continuous basis and retaliating against her for by terminating her when she took leave for her serious health condition and pregnancy.

45. The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided by the FMLA. Defendant interfered with Ms. Enders' right to take continuous FMLA leave by discouraging her from using such FMLA leave and requiring her to perform work during her continuous FMLA leave. Defendant's actions constitute interference with FMLA leave.

46. Ms. Enders exercised her FMLA rights by requesting and taking FMLA leave. Ms. Enders engaged in protected activity by requesting, and taking, FMLA leave. After engaging in protected activity by requesting and taking FMLA leave, Defendant terminated Ms. Enders within weeks after her return to work. Defendant promoted an employee who had not taken FMLA leave for the birth of a child and recovery, to Plaintiff's position, and then hired an outside consultant,

who had not been pregnant nor taken FMLA leave, to replace her. Defendant's actions constitute retaliation for taking FMLA leave.

47. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

48. Defendant's conduct harmed and caused damage to Plaintiff.

49. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
## Violation of Title VII- Sex Discrimination/Retaliation

50. Plaintiff restates and incorporates herein the foregoing paragraphs.

51. Title VII defines "because of sex" or "on the basis of sex" as follows:

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2 (h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k).

52. Plaintiff was subjected to disparate treatment in the terms and conditions of her job in the Defendant's workplace because of her sex, female.

53. Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males and non-pregnant employees were not subject to.

54. Plaintiff was qualified for her position.

55. Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex, including, but not limited to different terms and conditions of employment, retaliation for taking leave, and eventually the loss of her job than similarly situated non-pregnant employees.

56. Plaintiff engaged in protected activity under Title VII by notifying her employer of her pregnancy, requesting leave due to her pregnancy, and by taking leave.

57. After she engaged in protected activity under Title VII, defendant retaliated against her by terminating her.

58. Other non-pregnant employees who were similarly situated to Ms. Enders were not terminated.

59. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

60. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count III
### Violation of THRA- Sex Discrimination/Retaliation

61. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

62. Plaintiff was subjected to disparate treatment in the terms and conditions of her job at the Defendant's workplace because of her sex, female, and in particular, her pregnancy.

63. Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males and non-pregnant employees were not subject to.

64. Plaintiff was qualified for her position.

9

Case 3:21-cv-00411   Document 1   Filed 05/25/21   Page 9 of 12 PageID #: 9

65. Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex, including, but not limited to different terms and conditions, loss of pay and benefits and eventually the loss of her job than similarly situated non-pregnant employees.

66. Plaintiff engaged in protected activity under THRA by notifying her employer of her pregnancy, requesting leave due to her pregnancy, and by taking leave.

67. After she engaged in protected activity under THRA, defendant retaliated against her by terminating her.

68. Other non-pregnant employees who were similarly situated to Ms. Enders were not terminated.

69. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

70. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count IV
### Violation of Tennessee Maternity Leave Act

71. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

72. Plaintiff was employed for at least 12 months prior to her leave as a full-time employee of Defendant.

73. Defendant employees a minimum of 100 employees.

74. Plaintiff gave at least three (3) months' advance notice of her leave to Defendant.

75. Plaintiff was approved for maternity leave.

76. Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested TMLA, including but not limited to, interfering with her rights to take TMLA; retaliating against her for exercising her rights under the TMLA; and terminating her after she returned from leave.

77. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

78. Defendant's conduct harmed and caused damage to Plaintiff.

79. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Judgment in favor of Plaintiff and against Defendant on all counts in this action;

3. Back pay and damages for lost benefits or actual costs;

4. Reinstatement or front pay;

5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6. Punitive damages;

7. Liquidated damages under the FMLA;

8. Attorneys' fees and expenses;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter BPR # 022407
Ashley Shoemaker Walter BPR # 037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*